**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

14 CV 6540

---

WILLIAM PECK, Derivatively on Behalf of
Nominal Defendant, LIHUA INTERNATIONAL,
INC.,

                Plaintiff,

    vs.

JIANHUA ZHU, DAPHNE YAN HUANG,
YAYING WANG, ROBERT C. BRUCE,
JONATHAN P. SERBIN, SIU KI "KELVIN"
LAU, TIAN BAO WANG and MING ZHANG,

           Defendants,

   and

LIHUA INTERNATIONAL, INC.,

          Nominal Defendant.

---

CASE NO.



---

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

    Plaintiff William Peck ("Plaintiff"), by and through his undersigned attorneys, submits this Verified Shareholder Derivative Complaint (the "Complaint") against defendants named herein.

### SUMMARY OF THE ACTION

    1.    This is a shareholder's derivative action brought for the benefit of Nominal Defendant Lihua International, Inc. ("Lihua" or the "Company"). The Company maintains its principal place of business in the People's Republic of China ("PRC" or "China") and is in the business of developing, designing, manufacturing, marketing and distributing low cost, high quality refined copper products to primarily customers in the PRC. This derivative action is brought against certain members of the Company's Board of Directors (the "Board") and

certain of its executive officers (collectively, the "Individual Defendants") seeking to remedy the Defendants' violations of federal and state law, including issuing materially false and misleading proxy statements in violation of Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") and breaches of fiduciary duty during the period beginning August 9, 2012 through the present (the "Relevant Period").

2.      Defendants' violations arise from a course of misconduct whereby certain Defendants permitted dissemination of false and misleading statements to the investing public concerning the Company's reported financial performance and condition, including the Company's financial statements and statements regarding the adequacy of Lihua's internal controls. In fact, at the same time these Defendants were portraying Lihua's as a thriving company with a bright future, the exact opposite was true. In reality, Lihua's business had taken a turn for the worse starting from the end of 2012, including: (1) Lihua's cash flow had severely deteriorated and its warehouse had been seized and sealed by the local court; (2) Lihua's production activities substantially decreased in 2013, and have nearly ceased after the 2014 Spring Festival (January 14, 2014); and (3) the Company's now former President, Chief Executive Officer ("CEO") and Chairman of the Board, Defendant Jianhua Zhu ("Zhu"), had attempted to move Lihua's inventory in order to hide assets from creditors and as a result, he is now being investigated by the local police for larceny. Following the public disclosure of this adverse information in the U.S. by *GeoInvesting.com* on April 30, 2014, Lihua's stock price immediately dropped by more than 50%, from $4.33 per share to $2.08 per share.

3.      As a result of these revelations, the Company is now subjected to two class action securities lawsuits alleging violations of the federal securities laws on behalf of purchasers of Lihua stock from August 9, 2012 through April 30, 2014 (the "Class Period"). These cases,

which were originally filed in in the United States District Court, Central District of California, have been transferred to the United States District Court for the Southern District of New York (hereinafter the "Securities Class Actions").[1]

4.     The truth regarding the Individual Defendants' wrongful course of conduct began to emerge on March 28, 2014, after *People's Daily*, the official newspaper of the government of China, published an article exposing the Company's poor financial condition and stating that: (i) the Company had serious cash flow issues; (ii) Lihua's warehouse had been seized by authorities; (iii) production had severely decreased in 2013 and had ceased almost entirely in 2014; and (iv) Defendant Zhu was being investigated by local police for larceny for allegedly hiding Company assets.

5.     *People's Daily* is the official newspaper of the government of China, published worldwide with a circulation of 3 to 4 million.  In addition to its main Chinese-language edition, it has editions in English, Japanese, French, Spanish, Russian, Arabic, Tibetan, Kazakh, Uyghur, Mongolian, Korean and other minority languages in China.  The newspaper also has an online edition.  The newspaper provides direct information on the policies and viewpoints of the Chinese government.  It claims itself to be elected by UNESCO as one of the 10 most authoritative and most influential newspapers in the world. For those doing business in China, it is essential reading because it is well known that the Chinese government takes an active role in monitoring and regulating companies doing business in the PRC. This is well recognized by Lihua, which published seven pages of risk factors in its 2013 Form 10-K regarding the risks of doing business in in China, most of which were related to the Chinese government.

---

[1] Those cases are docketed at: (1) *Anand, et. al. v. Lihua International, Inc., et al.,* Case No: 1:14-cv-03543; and (2) *Grodko, et al v. Lihua International, Inc.,* Case No: 1:14-cv-05034.

6.     Although *People's Daily* published the article on March 28, 2014, the adverse information concerning Lihua was not publicly disclosed by the Company to U.S. investors until 32 days later on April 30, 2014.  In fact, it was not even the *People's Daily* article that put U.S. investors on notice that something was amiss.  Rather, it was only after *GeoInvesting.com* publicized the contents of the *People's Daily* report on its website that Lihua first publically disclosed anything whatsoever about the adverse and disturbing information concerning the Company and its senior management that had been publicized by *People's Daily* over a month earlier.

7.     On April 30, 2014, the Company issued a press release merely reiterating the information that had already been disclosed by others and acknowledging that the Individual Defendants had not yet been able to verify the information and were just beginning to take steps to determine what had happened.  The substance of the press release demonstrates that the Company's Directors knew nothing about what had been going on at the Company and had not perused *People's Daily* as part of their oversight duties. The press release stated:

> The Board of Directors of Lihua International, Inc. (NASDAQ: LIWA) ("Lihua" or the "Company"), is aware of a decline in the Company's stock price and published allegations that Mr. Zhu Jianhua, the Company's CEO and Chairman of the Company's Board, may have diverted or attempted to divert Company assets and as a result may have been the subject of action by local law enforcement. Although they have not yet been able to verify this information, the Board's Audit Committee is taking steps to determine the facts and will determine the facts and will take appropriate action. If the allegations prove true, the Company's financial statements may contain material misstatements.

8.     On May 7, 2014, the Company filed a Form 8-K announcing that the Company had received letters of resignation on May 6, 2014, that were dated May 4, 2014, from Defendants Zhu and Yaying Wang ("Y. Wang"), the Company's Chief Operating Officer

("COO"), Secretary, Board member and wife of Defendant Zhu, resigning from their management and Board positions due to "personal reasons."

9.     Next, on May 19, 2014, the Company filed a Form 8-K with the SEC reporting that Defendant Daphne Huang ("Huang"), the Company's Chief Financial Officer ("CFO"), on May 14, 2014, had received a stock purchase agreement (the "Agreement"), dated May 11, 2014, between Magnify Wealth Enterprises Limited, a BVI company ("Magnify Wealth"), and Power Apex Holdings Limited, a BVI company ("Power Apex"). According to the Company's 2013 Form 10-K, Magnify Wealth owned 13.35 million shares of Lihua's common stock representing a majority stake in the Company of over 44% and that Defendant Zhu was the sole director of Magnify Wealth with sole voting and investment power over the shares. Zhu was deemed to beneficially own all of the 13.35 million shares in the Company owned by Magnify Wealth as a result of the vesting in full of Defendant Zhu's option to purchase all 3,000 shares of Magnify Wealth (the "Option Shares") at $1.00 per share. While the option to purchase the Option Shares had vested in full, Defendant Zhu had not yet exercised the option. Furthermore, as Defendant Zhu's wife, Defendant Y. Wang is deemed to be the beneficial owner of all shares beneficially owned by Defendant Zhu.

10.     Based upon information provided to the Company, the May 19, 2014 Form 8-K represented that Wuxi Industry Development Group Co. Ltd. ("WXIDG") is an indirect substantial shareholder of Power Apex and is a state-owned enterprise of the PRC. There was no other information disclosed by the Company, Magnify Wealth and Power Apex regarding the terms and conditions of the Agreement. To this day, the terms and conditions of the Agreement between Magnify Wealth and Power Apex (indirectly owned by the PRC itself) have never been publicly disclosed.

11.    The next day the Company filed another Form 8-K dated May 20, 2014, reporting that on May 14, 2014, six days prior, Lihua received a letter from Nasdaq Stock Market LLC ("Nasdaq") informing the Company that its failure to timely file its Form 10-Q for the period ended March 31, 2014, violated Nasdaq Rule 5250(c)(1), which could result in the Company's stock being delisted. According to the May 20, 2014 Form 8-K, Nasdaq utilized its discretionary authority under Listing Rule 5101 to shorten the time frame for submission of a plan of compliance from 60 days to 7 days. Lihua's Board represented that it intended to submit a plan of compliance within the time frame provided by the Nasdaq. In clear dereliction of its fiduciary duties, the Board never submitted a plan of compliance within 7 days to Nasdaq. During the period of time the Company could have submitted a plan of compliance to Nasdaq but failed to do so, the Board consisted of Defendants Robert C. Bruce ("Bruce"), Jonathan P. Serbin ("Serbin") and Siu Ki "Kelvin" Lau ("Lau").

12.    On June 16, 2014, the Company filed a Form 8-K with the SEC disclosing that on June 10, 2014, the Lihua Board by unanimous written consent, appointed Defendant Tian Bao Wang ("T. Wang") to serve as Chief Executive Officer, President and Chairman of the Board, and Defendant Ming Zhang ("Zhang") to serve as a Director on the Lihua Board.  It was also disclosed that Power Apex, the entity that purchased a controlling interest in Lihua, is a wholly owned subsidiary of Jiangsu Jinhong Import and Export Co. ("Jinhong"), where Defendant T. Wang is a director and Zhang is Chairman of the Board. In turn, Jinhong is a subsidiary of Wuxi Jinde Asset Management Co., which is a subsidiary of WXIDG, the entity owned by the PRC. Thus, Defendants T. Wang and Zhang take their orders from the PRC, the controlling shareholder of Lihua through the PRC's controlling interest in WXIDG, which in turn controls Jinhong, of which Power Apex is a subsidiary.

13.    The next day, on June 17, 2014, the Company received a letter from Nasdaq stating that Nasdaq had determined to delist the Company's securities for several reasons, including: (i) public interests concerns associated with the allegations against Defendant Zhu and the Company's operational and financial status since those allegations were made public; (ii) alleged violations by the Company of Listing Rule 5250(b)(1), which sets forth a listed company's obligation to make prompt disclosure to the public through any Regulation FD complaint method (or combination of methods) of any material information that would reasonably be expected to affect the value of its securities or influence investors' decisions; and (iii) violation of Listing Rule 5250(c)(1), which sets forth a listed company's obligation to timely file all required periodic financial reports with the SEC. Although the Company had seven days to appeal Nasdaq's decision, in clear breach of its fiduciary duties the Board failed to file an appeal. During the period of time the Company had the opportunity to appeal Nasdaq's decision to delist Lihua securities, the Board consisted of the two PRC government members, Defendants T. Wang and Zhang, and Defendants Bruce, Serbin and Lau (all of whom had already breached their fiduciary duties by: (i) failing to exercise their oversight duties by not timely monitoring and staying abreast of the Company's operations and activities, especially those concerning PRC law enforcement; (ii) failing to submit a plan of compliance to Nasdaq to avoid being delisted; and (iii) failing to appeal Nasdaq's ruling delisting the Company). In fact, it was not until June 23, 2014, six days after receiving the Nasdaq notice of delisting on June 16, 2014, that Defendants T. Wang, Zhang, Bruce, Serbin and Lau finally issued a public disclosure regarding the Company's being delisted.

14.    On July 3, 2014, the Company filed a Form 8-K with the SEC disclosing that on June 27, 2014, Defendant Bruce, a purported independent director of the Company, Chairman of

the Company's Audit Committee and the Audit Committee's Financial Expert, resigned as a

member of the Board.  In a letter to Defendant T. Wang, Chairman of the Board, Defendant

Bruce attributed the reason for his resignation to the Board's failure to undertake an independent

and thorough investigation of the allegations of illegal activity concerning Defendant Zhu, the

circumstances surrounding the transfer of 44% of the Company by Zhu and Y. Wang to the PRC

government, and the Board's failure to fund the required retainer of a company retained by the

Audit Committee to conduct an independent investigation. Defendant Bruce's letter stated, in

part:

> I am writing to tender my resignation as a member as a member of the Board of
> Directors of [the Company], effective immediately. I have reached this difficult
> decision as a result of a conclusion that there is a substantial disagreement
> between me and the Company regarding the appropriate action of the Company
> with respect to an independent investigation (the "Investigation") of: the
> allegations of possible illegal activity made against … Mr. Zhu; the circumstances
> surrounding the transfer of the 44% ownership stake … to Power Apex, a
> company you are associated with; and the operational and financial status of the
> Company's two China-based operating subsidiaries.
>
> As you are aware, the Board of Directors has previously authorized the Audit
> Committee to undertake the Investigation, and the Audit Committee has signed an
> engagement letter with McDermott Will Emery LLP ("MWE") to conduct the
> Investigation … .Unfortunately, MWE has not been able to undertake more than a
> preliminary inquiry into the questions at hand because the Company has not
> funded the retainer required under the MWE engagement letter.
>
> In order to carry out my duties as an Independent Director and Chairman of the
> Audit Committee, I believe that it is critical that I have access to accurate
> information regarding the finances and operations of the Company. This is
> especially true given the troubling allegations and events that have arisen over the
> past two months. In my opinion, funding and otherwise supporting the
> Investigation should have been and continues to be the highest priority of the
> Company. Failure to fund the Investigation has resulted in a continuing near-total
> lack of verifiable Information regarding the allegations against Mr. Zhu, the
> circumstances of the share transfer to Power Apex, and the operational and
> financial condition of the Company's China-based subsidiaries. As a result, the
> Company's ability to make accurate and complete disclosures to Investors and
> regulatory bodies has been severely hampered, and my ability as a Director to

make decisions as a fiduciary for all of the Company's shareholders and their corporate constituents has been impeded.

15.     In the same Form 8-K issued by the Company on July 3, 2014, the Company disclosed that management and the Board were in the process of seeking the banking records of the Company's two operating subsidiaries and that based on the conclusions of an accounting consultant retained by Defendant T. Wang that the Company's operating subsidiaries were insolvent as of April 30, 2014. It was disclosed however, that the Board and Defendant Huang (Lihua's CFO) were not yet in a position to verify the conclusion of the accounting consultant. Further, the Company admitted that the factories operated by the Company's subsidiaries had been closed by court order and that management had been informed, but had not received documentary evidence of such, and that Defendant Zhu transferred his assets to the PRC government, which assets are believed to include assets belonging to the Company. The assets have not yet been returned to the Company and the Company made clear that "[a]t this time, the Company can provide no assurance that it will receive the benefit of the assets [Defendant] Zhu transferred to the PRC government … [and that] the Company's management, Board of Directors and Audit Committee are in the process of attempting to determine whether the Company's prior financial statements may be relied upon." Thus, at the present time, the two new members of senior management and the Board, Defendants T. Wang and Zhang, are holding assets belonging to the Company indirectly through the Company's controlling shareholder, the Chinese government.

16.     Plaintiff brings this action on behalf of the Company to, among other things, remedy various breaches of fiduciary duty by the Board and senior management including, but not limited to: (i) permitting the Company to issue materially false and misleading statements concerning Lihua's financial performance and condition resulting in the commencement of the

Securities Class Actions; (ii) permitting the dissemination of materially false and misleading Proxy Statements in 2012 and 2013 without full disclosure in connection with the: (a) election of directors, (b) ratification of the appointment of the Company's independent auditors who rendered unqualified opinions in 2012 and 2013; and (c) conducting of an advisory vote to approve the compensation paid to the Company's executive officers including certain of the Individual Defendants; (iii) failure to exercise their oversight duties by not periodically perusing *People's Daily* given the recognition by senior management and the Board of the riskiness of doing business in the PRC as demonstrated by the inclusion of at least six pages of risk factors related to China in Lihua's 2013 Form 10-K, most of which concerned the Chinese government; (iv) failure to submit a plan of compliance to Nasdaq in order to avoid being delisted; (v) failure to appeal the Nasdaq decision to delist the Company; (vi) failure to conduct an adequate investigation into the various issues raised in the *People's Daily* and *GeoInvesting.com* articles as admitted by Defendant Bruce; (vii) permitting the Chinese government to hold Company assets, which, in reality, implicates Defendants T. Wang and Zhang, who are majority shareholders of a Company indirectly owned and controlled by the Chinese government and the Board's failure to take action to recover such assets or terminate Defendants T. Wang and Zhang; (viii) failure to disclose the circumstances of the transfer of assets from Magnify Wealth to Power Apex; and (ix) not taking action against Defendants Zhu and Y. Wang for their misconduct. As a result of these breaches of fiduciary duties and other misconduct, Plaintiff seeks damages and equitable relief on behalf of the Company. The Company's shares are now priced in the $0.10 to $0.20 range.

17.     As a result of the misconduct described herein, current members of Lihua's Board are antagonistic to this lawsuit such that making a demand on the Board would be futile. Each of

the Individual Defendants (defined below) faces a substantial likelihood of non-exculpated liability for their breaches of fiduciary duty and violations of the federal securities laws, thus disabling the current Board members from impartially considering the subject matter of this lawsuit.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail and the facilities of a national securities market.  This is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

19.     This Court has jurisdiction over each Defendant named herein because each Defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contact with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

20.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because one or more of the defendants either resides in or maintains executive offices in this District, a substantial portion of the transactions and wrongs complained of herein, including defendants' primary participation in the wrongful acts detailed herein and aiding in violation of fiduciary duties owed to Lihua, occurred in this District and defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that have an effect in this District.

## PARTIES

21.     Plaintiff is currently and has continuously been a stockholder of Lihua since March 2011.

22.     Nominal Defendant Lihua is incorporated under the laws of the state of Delaware and maintains its principal place of business in the PRC. According to the Company's SEC Filings, Lihua develops, manufactures, markets and distributes refined copper products through its wholly-owned subsidiaries Lihua Electron Ltd. and Lihua Copper. Lihua's shares were listed and traded on the NASDAQ Exchange under the ticker "LIWA." NASDAQ delisted Lihua's shares on June 17, 2014. Lihua had more than 30 million shares issued and outstanding during the Relevant Period.

23.     Defendant Zhu is Lihua's founder and the former President, CEO and Chairman of the Board of Directors from October 2008 until his resignation on May 4, 2014. Zhu was a controlling shareholder of Lihua through his being the sole director of, and having the option to purchase for a total of $3,000 all of the stock of Magnify Wealth, which owned over 44% of Lihua's common stock.  On May 11, 2014, Zhu, through Magnify Wealth, sold 13,195,000 shares of common stock of the Company to the PRC. Zhu is the husband of Defendant Y.Wang. As an officer and Director of Lihua, Zhu either knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Lihua including its finances, operations and present and future business prospects because of his access to internal corporate documents, conversations and connections with other corporate officers, employees and Directors, attendance at management meetings and Board meetings, and committee meetings thereof, as well as reports and other information provided to him in connection therewith. Until his departure on May 4, 2014, Zhu participated in the issuance of improper statements, including the preparation of improper press releases and

12

SEC filings and approval of other statements made to the press, securities' analysts and Lihua stockholders. Zhu is a defendant in the Securities Class Actions. Zhu is a citizen of the PRC.

24.      Defendant Y. Wang is Lihua's former COO, Secretary and was a member of the Board of Directors from October 2008 until her resignation on May 4, 2014. Y. Wang was a controlling shareholder of Lihua along with her husband, Defendant Zhu, through her being the beneficial owner of all shares of Magnify Wealth's common stock beneficially owned by Zhu, as a result of the vesting of 100% of Zhu's option shares. As an officer and Director of Lihua, Y. Wang either knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Lihua including its finances, operations and present and future business prospects because of her access to internal corporate documents, conversations and connections with other corporate officers, employees and Directors, attendance at management meetings and Board meetings, and committee meetings thereof, as well as reports and other information provided to her in connection therewith. Until her departure on May 4, 2014, Y. Wang participated in the issuance of improper statements, including the preparation of improper press releases and SEC filings and approval of other statements made to the press, securities' analysts and Lihua stockholders. Y. Wang is a citizen of PRC.

25.      Defendant Huang has been Lihua's CFO and Treasurer since October 2011. She has been the Executive Vice President of Finance and Director of Investor Relations since October 2009. As an officer of Lihua, Huang either knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Lihua including its finances, operations and present and future business prospects because of his access to internal corporate documents, conversations and

connections with other corporate officers and employees, attendance at management meetings, as well as reports and other information provided to her in connection therewith. During the Relevant Period, Huang participated in the issuance of improper statements, including the preparation of improper press releases and SEC filings and approval of other statements made to the press, securities' analysts and Lihua stockholders. Huang is a defendant in the Securities Class Actions. Upon information and belief, Huang is a citizen of New York.

26.     Defendant Bruce served as a Director of Lihua from April 14, 2009 until his resignation on June 27, 2014.  Bruce was also a member of the Audit Committee and was described by the Company as the "audit committee financial expert."  As a Director of Lihua, Bruce either knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Lihua including its finances, operations and present and future business prospects because of his access to internal corporate documents, conversations and connections with other corporate officers, employees and Directors, attendance at Board meetings, and committee meetings thereof, as well as reports and other information provided to him in connection therewith. Until his departure on June 27, 2014, Bruce participated in the issuance of improper statements, including the preparation of improper press releases and SEC filings and approval of other statements made to the press, securities' analysts and Lihua stockholders. Upon information and belief, Bruce is a citizen of Pennsylvania.

27.     Defendant Serbin has been a Director of Lihua since April 2009 and a member of the Audit Committee.  Serbin also serves as the head of Asia Investment Banking of Mesa Global since 2012, an investment bank that is headquartered in New York. As a Director of Lihua, Serbin either knew, consciously disregarded, was reckless and grossly negligent in not

knowing or should have known the adverse, non-public information about the business of Lihua including its finances, operations and present and future business prospects because of his access to internal corporate documents, conversations and connections with other Directors, attendance at Board meetings, and committee meetings thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Serbin participated in the issuance of improper statements, including the preparation of improper press releases and SEC filings and approval of other statements made to the press, securities' analysts and Lihua stockholders. Upon information and belief, Serbin is a citizen of New York.

28.     Defendant Lau has been a Director of Lihua since October 20, 2009 and is a member of the Audit Committee.  Lau also works in the Equity Capital Markets and Corporate Finance department of Mizuho Securities, Asia Limited, which is a major Japanese investment banking and securities company. As a Director of Lihua, Lau either knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of Lihua including its finances, operations and present and future business prospects because of his access to internal corporate documents, conversations and connections with other Directors, attendance at Board meetings, and committee meetings thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Lau participated in the issuance of improper statements, including the preparation of improper press releases and SEC filings and approval of other statements made to the press, securities' analysts and Lihua stockholders.  Upon information and belief, Lau is a citizen of Hong Kong.

29.     Defendant B. Wang is Lihua's CEO, President and Chairman of the Board since his appointment on June 10, 2014.  Since July 2005 to present, B. Wang has served as General

Manager and Chairman of Jiangsu High Hope Electric Co., Ltd., a subsidiary of Jiangsu High Hope International Group.  B. Wang is also a director of Jinhong.  Jinhong owns 44% of the Company's shares through its wholly-owned subsidiary, Power Apex.  Jinhong is one of the subsidiaries of Wuxi, a state-owned enterprise of the PRC.  In essence, the PRC government is now the controlling and majority shareholder of Lihua and controls Defendant B. Wang.  Upon information and belief, B. Wang is a citizen of the PRC.

30.     Defendant Zhang is a Director of Lihua since his appointment on June 10, 2014. Since September 2008, Zhang has held positions managing investments at Wuxi Jinde Asset Management Co., Ltd., ("Wuxi AM"), a subsidiary of WXIDG, a state-owned enterprise of the PRC. Wang is Chairman of the Board of Jinhong. Jinhong owns 44% of the Company's shares through its wholly-owned subsidiary, Power Apex.  Jinhong is one of the subsidiaries of Wuxi AM, which is a subsidiary of WXIDG, a state-owned enterprise of the PRC.  In essence, the PRC government is now the controlling and majority shareholder of Lihua and controls Defendant Zhang. Upon information and belief, Zhang is a citizen of the PRC.

31.     Defendants Zhu, Y. Wang, Bruce, Serbin, Lau, B. Wang and Zhang are sometimes collectively referred to herein as the "Director Defendants."

32.     Defendants Serbin, Lau, B. Wang and Zhang are sometimes collectively referred to as the "Current Director Defendants."

33.     Defendants Bruce, Serbin and Lau are sometimes collectively referred to  herein as the "Audit Committee Defendants."

34.     Defendants Zhu, Huang, Y. Wang, Bruce, Serbin, Lau, B. Wang and Zhang are sometimes collectively referred to herein as  the "Individual Defendants."

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

35.     By reason of their positions as officers, directors and/or fiduciaries of Lihua during the Relevant Period and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed Lihua and its shareholders fiduciary obligations of good faith, loyalty and candor, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Lihua and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

36.     Each director and officer of the Company owes to Lihua and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company's affairs and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

37.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Lihua, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.   Due to their positions with Lihua, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

38.     To discharge their duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Lihua were required to, among other things:

a. Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

b. Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal, state and foreign laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

c. Exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company;

d. Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

e. When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

39. Moreover, Lihua maintains a Corporate Code of Ethics and Conduct (hereinafter the "Code"), which applies to the Company's employees, officers, directors as well as agents and contractors working on behalf of the Company. The purpose of the Code is to deter wrongdoing and promote ethical conduct and full, fair, accurate, timely and understandable reports that the Company files or submits to the SEC and others. The Code states in relevant part:

**CONFLICTS OF INTEREST**

The Company employees, officers and directors should avoid all potential conflicts of interests or situations that give the appearance of such conflict of

interest.  A conflict of interest occurs when the private interest of a Company employee (or an immediate family or household member or someone with whom you have an intimate relationship) interferes, anyway – or even appears to interfere – with the duties performed by the Company employee or with the interests of the Company as a whole.  A conflict situation can arise when an employee, officer or director takes actions or has interests that may make it difficult to perform his or her work objectively and effectively.  A conflict of interest may also arise when an employee, officer or director, or a member of his or her family, receives improper personal benefits as a result of his or her position in the Company.  Loans to, or guarantees of obligations of, such persons are of special concern.

There may be a conflict of interest between our management and our non-management stockholders.  A conflict of interest creates the risk that management may have an incentive to act adversely to the interests of other investors.  **A conflict of interest may arise between our management's personal pecuniary interest and its fiduciary duty to our stockholders.  Further, our management's own pecuniary interest may at some point compromise its fiduciary duty to our stockholders.**  In addition, the Company's officers and directors are currently involved with other publicly held, non-trading companies and conflicts in the pursuit of business combinations with such other companies with which they and any other members of our management are, and may be the future be, affiliated with may arise.  Our officers and directors therefore should use the utmost care to ensure they use their best efforts to comply with the obligations set forth above. (Emphasis added).

***

## SPECIAL ETHICAL OBLIGATIONS FOR EMPLOYEES WITH PUBLIC REPORTING RESPONSIBILITIES

**We are committed to carrying out all continuing disclosure obligations in a full, fair, accurate, timely and understandable manner.**  Depending on their position with the Company, employees, officers or directors may be called upon to provide information to assure that the Company's public reports are complete, fair and understandable.  The Company expects all of its personnel to take this responsibility very seriously and to provide prompt and accurate answers to inquiries related to the Company's public disclosure requirements.

Employees, officers and directors should promptly report to the Compliance Officer any conduct that the individual believes to be a violation of business ethics or of any provision of the Code, including any transaction or relationship that reasonably could be expected to give rise to such a conflict.  Violations, including failures to report potential violations by others, will be viewed as a severe disciplinary matter that may result in personnel action, including termination of employment. (Emphasis added).

\*\*\*

## CONTINUING DISCLOSURE OBLIGATIONS AND ACCURACY OF BUSINESS RECORDS

**In order to support our disclosure obligations, it is our policy to record and report our factual information honestly and accurately.  Failure to do so is a grave offense and will subject an individual to severe discipline by the Company, as well as possible criminal and civil penalties.**

Compliance with established accounting procedures, the Company's system of internal and disclosure controls and generally accepted accounting principles are necessary at all times.  **In order to achieve such compliance, the Company's records, books and documents must accurately reflect the transactions and provide a full account of the Company's assets, liabilities, revenues and expenses.**  Knowingly entering inaccurate or fraudulent information into the Company's accounting system is unacceptable and may be illegal.   Any individual that has knowledge that an entry or process is false and material are expected to consult the Compliance Officer.  In addition, it is the responsibility of each member of the Company to give their cooperation to the Company's authorized internal and external auditors.

Every individual should also be aware that almost all business records of the Company may become subject to public disclosure in the course of litigation or governmental investigation.  Records are also often obtained by outside parties or the media.  Employees should therefore attempt to be as clear, concise, truthful and accurate as possible when recording any information.  They must refrain from making legal conclusions or commenting on legal positions taken by the Company or others.  They must also avoid exaggeration, colorful language, and derogatory characterizations of people and their motives.  The Company will not tolerate any conduct that creates an inaccurate impression of the Company's business operations. (Emphasis added).

\*\*\*

## PROTECTION AND PROPER USE OF COMPANY ASSETS

**Employees, officers and directors should protect the Company's assets and ensure their efficient use.  Theft, carelessness and waste have a direct impact on the Company's profitability.**  All Company assets should be used for legitimate business purposes. (Emphasis added).

\*\*\*

20

## CORPORATE OPPORTUNITIES

**Employees, officers and directors are prohibited from** (a) taking for yourself personally opportunities that you discover through the use of Company property, information or position, (b) **using Company property**, information or position **for personal gain**, and (c) competing with the Company.  An employee, officer or director owes a duty to the Company to advance its legitimate interests when the opportunity to do so arises. (Emphasis added).

***

## RELATIONSHIPS WITH GOVERNMENT PERSONNEL

Separate and more stringent gift, meals, and entertainment rules apply to dealings with governmental officials.  Federal and state anti-kickback laws prohibit the Company and its representatives from knowingly and willfully offering, paying, requesting or receiving money or any other benefit, directly or indirectly, in return for obtaining or rewarding favorable treatment in connection with the award of a government contract.  Any employee who becomes aware of such conduct should immediately report it to the Compliance Officer.

The anti-kickback laws must be considered whenever something of value is given or received by the Company or its representatives or affiliated that is in any way connected to work performed for the government.  There are many transactions that may violate the anti-kickback rules.  As a result, no one acting on behalf of the Company may offer or accept gifts, loans, rebates, services, or payment of any kind to or from government suppliers and vendors without first consulting the Compliance Officer.

***

## BUSINESS DEALINGS IN FOREIGN COUNTRIES

Federal law prohibits U.S. Companies, and those acting on their behalf, from bribing foreign officials to obtain or retain business.  Foreign officials include officers and employees of a foreign government or of a foreign governmental department or agency.  Indirect payments including those to agents or third parties with the knowledge that at least a portion of the payment will be given to a foreign official for an illegal purpose are prohibited.  The Company will not tolerate any conduct that violates this law. ***

## INTERACTING WITH THE GOVERNMENT

We are committed to being a "good corporate citizen" and the Company values its good relations with local, state, federal and foreign governments.

21

The Company's policy is to deal honestly and fairly with government representatives and agents and to comply with valid and reasonable government requests or processes.  Be truthful and straightforward in your dealings with governmental representatives and do not encourage another Company employee (or someone else) to provide false or misleading information to any government agent or representative.  Do not direct or encourage anyone to destroy records relevant to a fact-finding process.

In recent years certain foreign governments have sought to restrict opportunities for local companies to become public trading companies in the United States, including through the reverse merger process, which may be a manner in which we complete a business combination with such a foreign enterprise.

The foregoing obligations are important in the face of these additional restrictions and our employees, officers and directors are strongly encouraged to work with capable representatives to assist in assuring that all transactions with foreign companies fully comply with local law.

### The Audit Committee

40.    According to the Company's 2013 10-K and the Company's Proxy Statement filed with the SEC on August 30, 2013, the Company's Audit Committee is responsible for performing the following functions:

1. Approve and retain the independent auditors to conduct the annual audit of our books and records;

2. Review the proposed scope and results of the audit;

3. Review and pre-approve the independent auditors' audit and non-audited services rendered;

4. Approve the audit fees to be paid;

5. **Review accounting and financial controls with the independent auditors and our internal auditors and financial and accounting staff;**

6. **Review and approve transactions between us and our directors, officers and affiliates;**

7. Recognize and prevent prohibited non-audit services; and

   8. **Meet separately and periodically with management and internal auditor and independent auditors.**

(Emphasis added).

41.     The 2013 Proxy Statement also provides that the Audit Committee is responsible for reviewing and approving the terms and conditions of all related party transactions, which encompasses all transactions with officers and directors and immediate family members of officers and directors, or any entities that such persons may have ownership or employment relationships with.

42.     During the Relevant Period, Defendants Bruce, Lau and Serbin served on the Company's Audit Committee. Additionally, the Board designated Bruce as the "audit committee financial expert" in accordance with the rules and regulations promulgated by the SEC and NASDAQ.  As members of the Audit Committee, Defendants Bruce, Lau and Serbin had an affirmative duty of oversight and responsibility for the integrity of the Company's financial reporting process.

43.     The Company's Audit Committee is governed by the Audit Committee Charter, which provides that it will "review and be responsible for, among other things, the Company's system of internal controls, its financial reporting process, the audit process, and the Company's processes for monitoring compliance with laws and regulations.  In performing its duties, the Audit Committee will maintain effective working relationships with the Board, management, the Company's internal auditors and the independent auditors."

44.     Furthermore, the Company's Audit Committee Charter during the Relevant Period specifically provides that the Audit Committee shall: (i) "[e]ngage and determine funding for independent counsel and other advisors as it determines necessary to carry out its duties;" and

"[c]onduct any and all investigations it deems necessary or appropriate." As represented in the June 27, 2014 resignation letter from Defendant Bruce to Defendant T. Wang, the Board failed to undertake an independent and thorough investigation of the allegations of illegal activity concerning Defendant Zhu, failed to investigate the circumstances regarding the sale of Zhu's controlling interest in the Company to Defendant T. Wang and others, including an entity indirectly controlled by the government of the PRC, and failed to adequately fund the retention agreement with a company retained by the Audit Committee to conduct an independent investigation, as was the Audit Committee's duty.

45.    According to Lihua's 2012 and 2013 Proxy Statements, the Board was responsible for risk oversight:

> The Board of Directors is responsible for the oversight of risk management related to the company and its business and accomplishes this oversight through regular reporting by the Audit Committee. The Audit Committee assists the Board of Directors by periodically reviewing the accounting, reporting and financial practices of the company, including the integrity of our financial statements, the surveillance of administrative and financial controls and the Company's compliance with legal and regulatory requirements. Through its regular meetings with management, including the finance and internal audit functions, the Audit committee reviews and discusses all significant areas of our business, including credit policies, inventory management practices, internal controls, accounting policies and procedures and summarizes for the Board of Directors areas of risk and the appropriate mitigating factors.

46.    Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duty of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Lihua, the absence of good faith on their part and a

reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

47.     The Individual Defendants breached their duties of loyalty and good faith by allowing defendants to cause, or by themselves causing the Company to misrepresent its financial results, failing to timely file the Company's periodic financial reports as required, submit a plan of compliance to Nasdaq thereby causing the Company to be delisted and rendering the Company's stock virtually worthless and untradeable, failure to appeal the delisting, failing to properly oversee the Company's business and operations, facilitating and failing to prevent the transfer of Company assets by defendant Zhu, failing to conduct an adequate investigation into the wrongdoing, and by failing to prevent Defendants T. Wang and Zhang from turning Company assets over to the PRC government.  As a result, Lihua has expended, and will continue to expend, significant sums of money, has suffered a severe drop in stock price and has suffered a continued loss of reputation and goodwill.

**Conspiracy, Aiding and Abetting and Concerted Action**

48.     The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct throughout the Relevant Period.  During the Relevant Period, the Individual Defendants caused the Company to conceal the true facts as alleged herein.

49.     The purpose and effect of the conspiracy, common enterprise and/or common course of conduct was, among other things, to: (i) disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment; and (ii) to conceal adverse information concerning the Company's operations, financial condition and future business prospects.

50. The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently fail to maintain effective accounting and internal control policies and procedures. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

51. Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

52. At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Lihua, and was at all times acting within the course and scope of such agency.

## SUBSTANTIVE ALLEGATIONS

### Background

53. Lihua was originally incorporated in the State of Delaware on January 24, 2006, under the name of Plastron Acquisition Corp. for the purpose of raising capital to be used to merge, acquire, or enter into a business combination with an operating business. Ally Profit was incorporated in the British Virgin Islands on March 12, 2008. In June 2008, Ally Profit became the parent holding company of a group of companies comprised of Lihua Holdings, a company organized under the laws of Hong Kong and incorporated on April 17, 2008. Lihua Holdings is the 100% shareholder of the Company's subsidiaries, Lihua Electron and Lihua Copper, each a

limited liability company organized under the existing laws of the PRC. Lihua Electron and Lihua Copper were incorporated on December 30, 1999 and August 31, 2007, respectively. The Company changed its name from Plastron Acquisition Corp. to Lihua on September 22, 2008. On September 4, 2009, the Company's common stock began trading on the NASDAQ Capital Market under the symbol "LIWA."

54.     According to its public filings, the Company is a vertically integrated company in China which develops, designs, manufactures, markets and distributes low cost, high quality refined copper products. The Company sells its products to domestic customers in the PRC. The Company attributes its purported success to several factors, including: (i) leading market position and early-mover advantage; (ii) proprietary automated and efficient production facility that can be scaled to meet increased demand; (iii) efficient proprietary production technology; (iv) rigorous quality control standards; (v) strong technology improvement and R&D capabilities; and (vi) experienced management and operations teams with local market knowledge, specifically, Defendants Zhu and Y. Wang.

## Certain Defendants Caused Lihua to Issue Materially False and Misleading Statements

55.     Defendants Zhu, Huang, Y. Wang, Bruce, Serbin and Lau breached their fiduciary duties by causing and allowing Lihua to issue public statements which did not accurately portray Lihua's true financial performance and condition.

56.     During the Class Period, Defendants Zhu, Huang, Y. Wang, Bruce, Serbin and Lau either knew, consciously disregarded, were reckless and grossly negligent in not knowing or should have known that they were causing the Company to issue false and misleading statements about the Company's business and prospects. In breach of their fiduciary duties of good faith and loyalty, and with respect to the members of the Audit Committee (Defendants Bruce, Lau

and Serbin), their fiduciary responsibilities as members of the Audit Committee, these Defendants either knew, consciously disregarded, were reckless and grossly negligent in not knowing the obvious and pervasive problems with the Company's financial statements, accounting practices, and its lack of adequate internal and financial controls, and failed to make a good faith effort to correct the problems or prevent their recurrence.

57.     Specifically, Defendants Zhu, Huang, Y. Wang, Bruce, Serbin and Lau either knew, consciously disregarded, were reckless and grossly negligent in not knowing or should have known that they were causing or allowing the Company to conceal from its shareholders that its financial statements for 2012 and 2013 contained significant errors and could not be relied upon.   Defendants Zhu, Huang, Y. Wang, Bruce, Serbin and Lau also either knew, consciously disregarded, were reckless and grossly negligent in not knowing or should have known that they were causing or allowing the Company to have material weakness in its internal controls over financial reporting and caused or allowed the Company to conceal the material weakness from shareholders.   This material weakness in internal controls over financial reporting was the cause of the errors in the financial statements for the periods spanning from the second quarter of 2012 through the fourth quarter of 2013, and caused the Company to be unable to timely file its 2014 1Q Form 10-Q, which ultimately formed part of the basis for the Company being delisted.

58.     As a result of the materially false and misleading statements and the lack of internal controls, Defendants Zhu, Huang, Y. Wang, Bruce, Serbin and Lau either knew, consciously disregarded, were reckless and grossly negligent in not knowing or should have known that they caused or allowed the Company to falsely inflate Lihua's stock price and as a result have subjected Lihua to the Securities Class Actions.   In defending the Securities Class

Actions, Lihua will continue to incur litigation costs, and is faced with substantial potential liability for violations of the federal securities laws.

59.     On August 9, 2012, Lihua filed its Form 10-Q for the quarter ended June 30, 2012 with the SEC ("2012 2Q 10-Q").  This Form 10-Q and the accompanying Sarbanes-Oxley Certifications were signed by Defendants Zhu and Huang. The 2012 2Q 10-Q reported, for the three-month period ended June 30, 2012, revenues totaling $191.0 million and a net income of $13.4 million. The 2012 2Q 10-Q reported that as of June 30, 2012, accounts receivable were $31.0 million, inventories were $17.8 million and total liabilities were $15.6 million.

60.     As admitted in recent public filings by the Company, these statements regarding the Company's financial performance and condition as set forth in the 2012 2Q 10-Q were materially false and misleading and the Company's financial statements should not be relied upon.

61.     On September 4, 2012, Lihua filed a Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 (the "2012 Proxy"), and asked shareholders to vote on the following matters:

- Election of the Directors:  Zhu, Y. Wang, Bruce, Serbin and Lau;

- The ratification of the appointment of Crowe Horwath (HK) CPA Limited as Lihua's independent auditor for fiscal year 2012;

- To conduct an advisory vote to approve the compensation paid to the Company's named executive officers, as disclosed under the caption Election of Directors – Executive Compensation; and

- To consider and take action upon such other matters as may properly come before the meeting or any adjournment or adjournments thereof.

62.     The 2012 Proxy described director responsibilities, the duties of each committee, Board risk management, and information about the nominees. The 2012 Proxy also stated that:

Lihua's Board of Directors is responsible for the oversight of risk management related to the company and its business and accomplishes this oversight through regular reporting by the Audit Committee. The Audit Committee assists the Board of Directors by periodically reviewing the accounting, reporting and financial practices of the Company, including the integrity of the Company's financial statements, the surveillance of administrative and financial controls and the Company's compliance with legal and regulatory requirements. Through its regular meetings with management, including the finance and internal audit functions, the Audit Committee reviews and discusses all significant areas of our business, including credit policies, inventory management practices, internal controls, accounting policies and procedures and summarizes for the Board of Directors areas of risk and the appropriate mitigating factors. Our business and affairs are managed under the direction of our board of directors. The primary responsibilities of our board of directors are to provide oversight, strategic guidance, counseling and direction to our management.

63. The 2012 Proxy was false and misleading as it failed to disclose to investors the material information regarding the Company's financial condition and future business prospects and that the Board and Audit Committee were not exercising their oversight of risk management as was falsely represented above in ¶ 62 and their impact on the Company that would affect shareholders' votes on the proposed items.

64. On November 9, 2012, Lihua filed its Form 10-Q for the quarter ended September 30, 2012 with the SEC ("2012 3Q 10-Q"). This Form 10-Q and the accompanying Sarbanes-Oxley Certifications were signed by Defendants Zhu and Huang. The 2012 3Q 10-Q reported, for the three-month period ended September 30, 2012, revenues totaling $238.8 million and a net income of $17.2 million. The 2012 3Q 10-Q reported that as of September 30, 2012, accounts receivable were $42.4 million, inventories were $22.2 million and total liabilities were $18.2 million.

65. As admitted in recent public filings by the Company, these statements regarding the Company's financial performance and condition as set forth in the 2012 3Q 10-Q were

materially false and misleading and the Company's financial statements should not be relied upon.

66.     On March 15, 2013, Lihua issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2012.  For the quarter, the Company reported net income of $15.8 million, or $0.52 diluted earnings per share ("EPS") and revenue of $254.9 million, compared to net income of $12.7 million or $0.43 diluted EPS and revenue of $177.6 million for the same period a year prior.  For the year, the Company reported net income of $57.9 million, or $1.93 diluted EPS and revenue of $853.8 million, compared to net income of $53.1 million, or $1.77 diluted EPS and revenue of $637.1 million for the same year prior.

67.     In the press release, Defendant Zhu stated: "*2012 was a year of record performance for Lihua, in which we exceeded our full-year guidance for both gross profit and non-GAAP net income* . . . we were able to increase revenues and profitability based on strong demand from key customers, efficiency improvement and further capacity expansion."  Defendant Zhu also also made the following statement, included in the press release: "We further strengthened our financial position in 2012, completing the year with over $144 million in cash, providing us with the resources necessary to fund our future growth through continued investment in capacity expansion, efficiency improvement, new market penetration and product development, and positioning us to lead the next wave of industry growth."  (Emphasis added).

68.     On March 18, 2013, the Company filed an annual report for the period ended December 31, 2012 on a Form 10-K with the SEC signed by Defendants Zhu, Huang, Y. Wang, Bruce, Serbin and Lau.  The Form 10-K reiterated the Company's previously reported financial results and financial position.  In addition, the Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Zhu and Huang stating that

the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

69.     The 10-K represented the following concerning the Company's revenue recognition policy:

> Revenue is recognized when the following four revenue criteria are met: persuasive evidence of an arrangement exists, delivery has occurred, the selling price is fixed or determinable and collectability is reasonably assured.

> Sales revenue is recognized net of value added tax, sales, discounts and returns at the time when the merchandise is sold and delivered to the customer.  Based on historical experience, management estimates that sales returns are immaterial and has not made an allowance for estimated sales returns.

70.     As admitted in recent public filings by the Company, these statements regarding the Company's financial performance and condition, internal controls and revenue recognition policies for the fourth quarter and year ending December 31, 2013 as set forth in ¶¶ 66-69 were materially false and misleading and the Company's financial statements should not be relied upon.

71.     On May 10, 2013, Lihua filed its Form 10-Q for the quarter ended March 31, 2013 with the SEC ("2013 1Q 10-Q").  This Form 10-Q and the accompanying Sarbanes-Oxley Certifications were signed by Defendants Zhu and Huang.  The 2013 1Q 10-Q reported, for the three month period ended March 31, 2013, revenues totaling $218.2 million and a net income of $13.3 million. The 2013 1Q 10-Q reported that as of March 31, 2013, accounts receivable were $42 million, inventories were $21.5 million and total liabilities were $19.8 million.

72.     As admitted in recent public filings by the Company, these statements regarding the Company's financial performance and condition as set forth in the 2013 1Q 10-Q were materially false and misleading and the Company's financial statements should not be relied upon.

73.     On August 9, 2013, Lihua filed its Form 10-Q for the quarter ended June 30, 2013 with the SEC ("2013 2Q 10-Q"). This Form 10-Q and the accompanying Sarbanes-Oxley Certifications were signed by Defendants Zhu and Huang. The 2013 2Q 10-Q reported, for the three month period ended June 30, 2013, revenues totaling $245.8 million and a net income of $15.7 million. The 2013 2Q 10-Q reported that as of June 30, 2013, accounts receivable were $43.9 million, inventories were $19.4 million and total liabilities were $18 million.

74.     As admitted in recent public filings by the Company, these statements regarding the Company's financial performance and condition as set forth in the 2013 2Q 10-Q were materially false and misleading and the Company's financial statements should not be relied upon.

75.     On August 30, 2013, Lihua filed a Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 (the "2013 Proxy"), and asked shareholders to vote on the following matters:

- Election of the Directors:  Zhu, Y. Wang, Bruce, Serbin and Lau;

- The ratification of the appointment of Crowe Horwath (HK) CPA Limited as Lihua's independent auditor for fiscal year 2013;

- To conduct an advisory vote to approve the compensation paid to the Company's named executive officers, as disclosed under the caption Election of Directors – Executive Compensation; and

- To consider and take action upon such other matters as may properly come before the meeting or any adjournment or adjournments thereof.

76.     The 2013 Proxy described director responsibilities, the duties of each committee, Board risk management, and information about the nominees. The 2013 Proxy also stated that:

> Lihua's Board of Directors is responsible for the oversight of risk management related to the company and its business and accomplishes this oversight through regular reporting by the Audit Committee.  The Audit Committee assists the Board of Directors by periodically reviewing the accounting, reporting and financial practices of the Company, including the integrity of the Company's

financial statements, the surveillance of administrative and financial controls and the Company's compliance with legal and regulatory requirements. Through its regular meetings with management, including the finance and internal audit functions, the Audit Committee reviews and discusses all significant areas of our business, including credit policies, inventory management practices, internal controls, accounting policies and procedures and summarizes for the Board of Directors areas of risk and the appropriate mitigating factors. Our business and affairs are managed under the direction of our board of directors. The primary responsibilities of our board of directors are to provide oversight, strategic guidance, counseling and direction to our management.

77.     The 2013 Proxy was false and misleading as it failed to disclose to investors the material information regarding the Company's financial condition and future business prospects and that the Board and Audit Committee were not exercising their oversight of risk management as was falsely represented above in ¶ 76 and their impact on the Company that would affect shareholders' votes on the proposed items.

78.     On November 12, 2013, Lihua filed its Form 10-Q for the quarter ended September 30, 2013 with the SEC ("2013 3Q 10-Q"). This Form 10-Q and the accompanying Sarbanes-Oxley Certifications were signed by Defendants Zhu and Huang. The 2013 3Q 10-Q reported, for the three month period ended September 30, 2013, revenues totaling $219.3 million and a net income of $13.9 million. The 2013 3Q 10-Q reported that as of September 30, 2013, accounts receivable were $49 million, inventories were $23.7 million and total liabilities were $22 million.

79.     As admitted in recent public filings by the Company, these statements regarding the Company's financial performance and condition as set forth in the 2013 3Q 10-Q were materially false and misleading and the Company's financial statements should not be relied upon.

80.     On March 17, 2014, Lihua issued a press release announcing its financial results for the fourth quarter ended December 31, 2013. For the quarter, the Company reported net

income of $13.2 million, or $0.44 diluted EPS and revenue of $217.3 million, compared to net income of $15.8 million or $0.52 diluted EPS and revenue of $254.9 million for the same period a year prior.  For the year, the Company reported net income of $56.2 million, or $1.87 diluted EPS and revenue of $900.7 million, compared to net income of $57.9 million, or $1.93 diluted EPS and revenue of $853.8 million for the same period a year prior.

81.     In the press release, Defendant Zhu stated: "2013 was a transitional year for Lihua as we invested in critical upgrades and process improvements to our facilities and prepared to launch a new higher technology, higher quality CCA superfine wire product.  Although these enhancements resulted in fewer production days, and therefore, reduced sales and profitability, we believe these developments will help to drive improvement on both the top and bottom lines in the future."  Defendant Zhu also made the following statement, included in the press release: "We remain modestly positive about the outlook for Lihua, despite relatively weak infrastructure spending in China and persistent narrower spreads between the purchase price of our raw materials and the average copper market price.  During the year, *we continued to strengthen our balance sheet and cash flow from operations, and we have no debt.  We believe these changes, along with our strong cash position provide a solid foundation on which to grow our business and improve market share in 2014*."  (Emphasis added).

82.     On March 17, 2014, the Company filed an annual report for the period ended December 31, 2013 on a Form 10-K with the SEC signed by Defendants Zhu, Huang, Wang, Bruce, Serbin and Lau.  The Form 10-K reiterated the Company's previously reported financial results and financial position.  In addition, the Form 10-K contained signed certifications pursuant to SOX by Defendants Zhu and Huang stating that the financial information contained

in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

83.     The 10-K represented the following concerning the Company's revenue recognition policy:

> Revenue is recognized when the following four revenue criteria are met: persuasive evidence of an arrangement exists, delivery has occurred, the selling price is fixed or determinable and collectability is reasonably assured.
>
> Sales revenue is recognized net of value added tax, sales, discounts and returns at the time when the merchandise is sold and delivered to the customer.   Based on historical experience, management estimates that sales returns are immaterial and has not made an allowance for estimated sales returns.

84.     As admitted in recent public filings by the Company, these statements regarding the Company's financial performance and condition, internal controls and revenue recognition policies for the fourth quarter and year ending December 31, 2013 as set forth in ¶¶ 80-83 were materially false and misleading and the Company's financial statements should not be relied upon.

## THE TRUTH REGARDING THE INDIVIDUAL DEFENDANTS' WRONGFUL COURSE OF CONDUCT BEGINS TO EMERGE AND THE MISSTATEMENTS CONTINUE

85.     On March 28, 2014, *People's Daily*, the official newspaper of the government of China, published an article exposing the Company's poor financial condition and stating that Defendant Zhu, the former President, Chief Executive Officer of the Company and the Chairman of the Board of Directors during the Relevant Period, attempted to transfer Lihua's inventory to himself in order to hide Lihua's assets from creditors.

86.     Although the Board recognized that doing business in China was fraught with risk, as demonstrated by the six pages of risk factors set forth in the Company's 2013 Form 10-K

devoted, in large part, to the Chinese government, the Board failed to keep abreast of the PRC government's activities by failing to review the leading government publication, *People's Daily*, where the adverse information about Lihua was first disclosed.  It was not until 32 days later on April 30, 2014, when a US publication, *GeoInvesting.com*, reprinted the *People's Daily* report on its website that Lihua first publically commented on the allegations. Immediately following the *GeoInvesting.com* report on April 30, 2014, the value of Lihua's stock dropped by more than 50%, from $4.33 per share to $2.08 per share. It is clear that none of the Defendants even read the *People's Daily*, in clear violation of the Board's oversight duties. This is demonstrated by the fact that from the publication of the *People's Daily* report on March 28, 2014 through the April 30, 2014 disclosure by *GeoInvesting.com*, the Defendants remained silent about the adverse information concerning the Company.

87.     Finally, on April 30, 2014, Lihua issued a press release stating the following:

> The Board of Directors of Lihua is aware of a decline in the Company's stock price and published allegations that Mr. Zhu Jianhua, the Company's CEO and Chairman of the Company's Board, may have diverted or attempted to divert Company assets and as a result may have been the subject of action by local law enforcement. ***Although they have not yet been able to verify this information, the Board's Audit Committee is taking steps to determine the facts and will take appropriate action.  If the allegations prove true, the Company's financial statements may contain material misstatements.*** **(Emphasis added).**

Thus, it is clear from the press release that the Company's Board had little or no knowledge of Lihua's financial condition or problems facing the Company and its senior management.

88.     On May 4, 2014, less than one week after Lihua issued its press release, Defendants Zhu and Y. Wang resigned from the Board due to "personal reasons."

89.     One week later, it was disclosed that Defendants Zhu and Y. Wang sold their controlling position of over 13 million shares representing approximately 44% of the Company

to Power Apex.   Power Apex is a wholly owned subsidiary of Jinhong which in turn, is a subsidiary of WXIDG, a state-owned enterprise of the PRC. Thus, the Chinese government is indirectly the controlling shareholder of Lihua.

90.     On May 14, 2014, the Company filed a Form 8-K with the SEC stating that Lihua received a letter from the Staff of Nasdaq advising them that the Company is not in compliance with Nasdaq's disclosure requirements due to the Company's failure to file its Form 10-Q for the period ended March 31, 2014, which was required to be filed by May 10, 2014.  The Company was required to submit a plan of compliance to Nasdaq within 7 days.  The Board of Lihua indicated that it intended to submit a plan of compliance within the timeframe provided by the Nasdaq Staff.

91.     The Board, in stark contrast to their representations and in breach of their duty of loyalty, failed to submit the plan of compliance to Nasdaq which eventually caused the Company's stock to be delisted rendering the Company's stock virtually worthless and untradeable.

92.     The Board remained silent until June 10, 2014, when it announced that it had appointed Defendant B. Wang to serve as CEO and Chairman of the Board, and Defendant Zhang to serve as a Director on the Board.  Defendant B. Wang is a Director of Jinhong and Defendant Zhang is the Chairman of the Board of Jinhong, the very entity that now owns 44% of the Company.   In sum and substance, the government of the PRC is now indirectly the controlling shareholder of the Company and has the ability to exert its control over Defendants B. Wang and Zhang, which it has already displayed be taking possession of Company assets. Neither Defendants B. Wang nor Zhang has attempted to procure for the Company the assets being held by the PRC government.

93.     One week later, on June 17, 2014, Lihua filed a Form 8-K with the SEC stating that Nasdaq has determined to delist the Company's securities for several reasons.  The letter from Nasdaq stated the following:

> The Nasdaq Staff has determined to delist the Company's securities pursuant to its discretionary authority under Listing Rule 5101.  The Nasdaq Staff cited a number of reasons for their decision, including: 1) concerns associated with the allegations against the Company's former CEO and Chairman, Defendant Zhu, and the Company's operational and financial status since those allegations were made public; 2) alleged violations by the Company of Listing Rule 5250(b)(1) for failing to make a prompt disclosure of any material information that would reasonably be expected to affect the value of its securities or influence investors' decisions; and 3) Listing Rule 5250(c)(1) for failing to timely file all required periodic financial reports with the SEC.

> The deadline to appeal the Nasdaq Staff's decision to delist is June 24, 2014.

94.     This time, the Company stated that it had not yet made a determination as to whether it will appeal the decision.  The Company failed to request an appeal.

95.     On June 27, 2014, Defendant Bruce, Chairman of the Company's Audit Committee and the Audit Committee's Financial Expert, resigned as a member of the Board.  In a letter to Defendant B. Wang, Defendant Bruce stated the following:

> I am writing to tender my resignation as a member of the Board of Lihua, effective immediately.  I have reached this difficult decision as a result of the conclusion that there is a substantial disagreement with respect to an independent investigation (the "Investigation") of: the allegations made against the Company's former Chairman and CEO, Defendant Zhu; the circumstances surrounding the transfer of 44% of the Company to Power Apex; and the operational and financial status of the Company's two China based subsidiaries.

96.     In fact, Defendant Bruce disclosed that the Board previously authorized the Audit Committee to undertake the Investigation, and the Audit Committee retained McDermott Will & Emery LLP ("MWE") to conduct the Investigation.  However, the Company failed to fund MWE's required retainer and therefore, nothing more than a preliminary inquiry has occurred.

The June 27, 2014 Bruce resignation letter was not publicly disclosed by the Company until July 3, 2014, almost a week later.

97.     Following Bruce's resignation, the Company filed a Form 8-K on July 3, 2014, disclosing the following, in relevant part:

> Mr. Bao Wang, the balance of the Board and the Company's Chief Financial Officer are working to collect financial information for each of the Company's operating subsidiaries.  Management and the Board of Directors are in the process of seeking to obtain the banking records for the subsidiaries.  Additionally, Mr. Bao Wang engaged an accounting consultant to assist him in obtaining financial information about the Company's subsidiaries prior to Messrs. Bao Wang and Zhang joining the Board of Directors and Mr. Bao Wang becoming Chief Executive Officer.  That work was limited in scope as it was intended to provide Messrs. Bao Wang and Zhang with a sense of the subsidiaries' solvency prior to Messrs. Bao Wang and Zhang joining the Company.  Nonetheless, the conclusion of that work is that the subsidiaries were insolvent as of April 30, 2014.  Mr. Bao Wang has shared that work with the Company's Board of Directors and Chief Financial Officer.  The Board of Directors and the Chief Financial Officer are not yet in a position to verify the conclusion of the accounting consultant, but their efforts are ongoing.

> Following the allegations regarding Mr. Zhu, members of the Board and management traveled to the site in the PRC where the Company's subsidiaries operated, which they had previously visited regularly in the course of their duties.  Based upon their recent on-site observations, the Company believes the factories operated by the Company's subsidiaries in the PRC, although visibly undamaged and containing inventory, have been closed by court order.  In addition, management has been informed (but has not yet received documentary evidence of such) that **Mr. Zhu has transferred his assets to the PRC government, which assets are believed to include assets belonging to the Company or to which the Company may have a claim, and that preliminary indications from the PRC government is that the government intends to transfer such assets back to the Company to permit the Company to partially satisfy its obligations to its creditors, although such obligations are believed to exceed the assets of the Company.  At this time, the Company can provide no assurance that it will receive the benefit of the assets that Mr. Zhu transferred to the PRC government,** that its factories will restart operations in the future, or whether a liquidation will be commenced, or whether the Company and/or its subsidiaries will seek protection from creditors.

> In order to recommence operations, the Company likely would need to raise external capital for which it has no commitments and which will be difficult to obtain based on the financial condition of the Company.  As the Company's

investigation proceeds, it intends to provide additional information to its shareholders. Furthermore, the Company's management, Board of Directors and Audit Committee are in the process of attempting to determine whether the Company's prior financial statements may be relied upon. (Emphasis added).

98.     Throughout the Relevant Period, in blatant disregard of and in breach of their fiduciary duties, certain of the Individual Defendants identified herein: (i) permitted the Company to issue materially false and misleading statements concerning Lihua's financial performance and condition resulting in the commencement of the Securities Class Actions (Defendants Zhu, Huang, Y. Wang, Bruce, Serbin and Lau); (ii) permitting the dissemination of materially false and misleading Proxy Statements in 2012 and 2013 without full disclosure in connection with the: (a) election of directors, (b) ratification of the appointment of the Company's independent auditors who rendered unqualified opinions in 2012 and 2013; and (c) conducting of an advisory vote to approve the compensation paid to the Company's executive officers including certain of the Individual Defendants as well as misrepresenting that the Board was exercising their oversight duties concerning risk management when in fact they were not (Defendants Zhu, Huang, Y. Wang, Bruce, Serbin and Lau); (iii) the Board's failure to exercise their oversight duties by not periodically perusing *People's Daily* given the recognition by senior management and the Board of the riskiness of doing business in the PRC as demonstrated by the inclusion of at least six pages of risk factors related to China in Lihua's 2013 Form 10-K, most of which concerned the Chinese government (Defendants Zhu, Y. Wang, Bruce, Serbin and Lau); (iv) failure to timely file the Company's 2014 1Q Form 10-Q subjecting the Company to be delisted (Defendants Zhu, Huang, Y. Wang, Bruce, Serbin and Lau); (v) failure to submit a plan of compliance to Nasdaq in order to avoid being delisted and misrepresenting their intention to do so (Defendants B. Wang and Zhang as controlling shareholders of the Company through Power Apex, Huang, Bruce, Serbin and Lau); (vi) failure to appeal the Nasdaq decision to delist the

Company (Defendants B. Wang, Zhang, Huang, Bruce, Serbin and Lau); (vii) failure to conduct an adequate investigation into the various issues raised in the *People's Daily* and *GeoInvesting.com* articles as admitted by Defendant Bruce (Defendants B. Wang, Zhang, Huang, Bruce, Serbin and Lau); (viii) permitting the Chinese government to hold Company assets, which, in reality, implicates Defendants B. Wang and Zhang, who are controlling shareholders of a Company indirectly owned and controlled by the Chinese government and the Board's failure to take action to recover such assets or terminate Defendants T. Wang and Zhang (Defendants B. Wang, Zhang, Huang, Bruce, Serbin and Lau); (ix) failure to disclose the circumstances of the transfer of assets from Magnify Wealth to Power Apex (all Individual Defendants); and (x) not taking action against Defendants Zhu and Y. Wang for their misconduct (Defendants B. Wang, Zhang, Huang, Bruce, Serbin and Lau). As a result of these breaches of fiduciary duties and other misconduct, Plaintiff seeks damages and equitable relief on behalf of the Company. The Company's shares are now priced in the $0.10 to $0.20 range.

99.     Plaintiff brings this action on behalf of the Company to, among other things, recover damages including, but not limited to, fees, costs, loss of goodwill and business opportunities caused by the Individual Defendants' unlawful courses of conduct and breaches of fiduciary duty.

100.     As a result of the misconduct described herein, current members of Lihua's Board, Defendants B. Wang, Zhang, Serbin and Lau are antagonistic to this lawsuit such that making a demand on the Board would be futile. Each of these Individual Defendants faces a substantial likelihood of non-exculpated liability for their breaches of fiduciary duty thus disabling the current Board members from impartially considering the subject matter of this lawsuit.

## DAMAGES TO LIHUA CAUSED BY THE INDIVIDUAL DEFENDANTS

101.    As a direct and proximate result of the Individual Defendants' misconduct, Lihua failed to maintain proper internal accounting controls, caused the Company to release false and misleading statements, pilfered Company assets, permitted the Company to be delisted and substantially damaged the Company's credibility, corporate image and goodwill.

102.    Lihua has expended and will continue to expend significant sums of money. Additional expenditures and damages that the Company has incurred as a result of the Individual Defendants' breaches of their fiduciary duty include:

        a.      costs incurred from investigating, defending and paying any settlement or judgment in the Securities Class Actions for violations of federal securities laws;

        b.      compensation and benefits the Company paid to the Individual Defendants, who have breached their duties to Lihua, which was based at least in part on Lihua's artificially-inflated stock price and inflated revenues; and

        c.      costs incurred from the loss of Lihua's customers' confidence in the Company's services.

103.    Lihua has already admitted that it may have to restate its previously filed financial statements. This restatement will subject the Company to significant costs in the form of accounting, legal, and similar professional fees, in addition to the substantial diversion of time and attention of the Company's CFO, other officers and directors and members of the Company's accounting department in preparing and reviewing the restatement. Any such restatement could also adversely affect the Company's business, its ability to access the capital markets and the market price of Lihua's common stock. Moreover, once the restatement is

complete the Company faces the cost of preparing for and applying to being listed again on a national exchange

104.    Moreover, these actions have irreparably damaged Lihua's corporate image and goodwill.   The Company has acknowledged that in order to recommence operations, the Company likely would need to raise external capital for which it has no commitments and which will be difficult to obtain based upon the financial condition of the Company.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

105.    Plaintiff brings this action derivatively in the right and for the benefit of Lihua to redress injuries suffered, and to be suffered, by Lihua as a direct result of breaches of fiduciary duty, waste of corporate assets and unjust enrichment.

106.    Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

107.    Lihua is named as a nominal defendant in this case solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have. Plaintiff is and was a shareholder of Lihua at the time of the transgressions complained of. Plaintiff will adequately and fairly represent the interests of Lihua and its shareholders in enforcing and prosecuting their rights.   Prosecution of this action, independent of the current Board of Directors, is in the best interests of the Company.

108.    The wrongful acts complained of herein subject, and will continue to subject, Lihua to continuing harm because the adverse consequences of the actions are still in effect and ongoing.

109.    The wrongful acts complained of herein were unlawfully concealed from Lihua's shareholders.

110.     Throughout the Relevant Period, the Individual Defendants violated multiple corporate governance principles, thus representing evidence of the Individual Defendants' breaches of fiduciary duties. The course of action related misrepresenting the financial integrity of the Company, and caused the Individual Defendants to breach the following corporate principles, among others:

     a.     directors, officers and employees should protect the Company's assets and ensure their efficient use;

     b.     comply with United States generally accepted accounting principles at all times;

     c.     maintain books and records that accurately and fairly reflect the Company's transactions; and

     d.     maintain a system of internal controls that will provide reasonable assurances to management that material information about the Company is made known to management, particularly during the periods in which the Company's periodic reports are being prepared.

111.     As a result of the facts set forth herein, Plaintiff has not made any demand on the Current Directors to institute this action since such demand would be a futile and useless act because the Current Directors are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action. The wrongful acts complained of herein show a wholesale abandonment by the Individual Defendants, including the Current Directors, of their fiduciary duties of due care and oversight.  Such abandonment includes, but is not limited to the following:

a.      Allowing for materially inadequate controls over the Company's policies and practices with respect to accounting at least for revenue, income, and asset valuations;

b.      Allowing Company assets to be diverted and/or transferred to the Company's controlling shareholder, the government of the PRC, without recourse;

c.      Failing to conduct an adequate investigation into the purported misconduct of the Company's former and current senior management and seeking redress for such misconduct;

d.      Allowing the Company's financial statements to be artificially inflated;

e.      Allowing the Company to fail to timely file its periodic reports with the SEC in violation of federal rules and regulations;

f.      Allowing the Company's shares to be delisted without submitting a plan of compliance as represented and failing to appeal the decision to delist the Company's shares; and

g.      Allowing the Company to fail to disclose pertinent, material, and important information in a timely manner.

112.    A majority of the Board is incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action for the reasons set forth above in ¶ ¶ 110-111 and below.

113.    Defendants B. Wang and Zhang are fronts for the PRC, which currently controls the Company and Defendants B. Wang and Zhang through the Chinese government's indirect ownership of approximately 44% of the Company and possession of Company assets. Defendants B. Wang and Zhang are interested directors and are incapable of considering a demand due to their relationship with the PRC and their ownership interest in the Company.

114.     Defendants Serbin and Lau have served as Directors of the Company since April 2009 and October 2009, respectively.  They are also both members of the Company's Audit Committee. According to the Audit Committee Charter, Defendants Serbin and Lau had the specific duty to oversee all material aspects to the Company's reporting, control, and audit functions.  Because they breached that duty, there is a high likelihood that they will be held personally liable in any litigation brought on behalf of the corporation. It is for this reason among others that Defendants Serbin and Lau, as supposed "Independent Directors" and members of the Audit Committee, are not disinterested and cannot reasonably decide whether to bring litigation against themselves on behalf of the corporation.

115.     During the Relevant Period, the Audit Committee consisted of Defendants Bruce (Chair), Serbin and Lau.  The Audit Committee Charter charges its members with reviewing the adequacy and effectiveness of the Company's accounting and internal controls policies and procedures.  Thus, Defendants Bruce, Serbin and Lau were expressly responsible for ensuring that Lihua did not have material weaknesses in its accounting controls.  Additionally, the Audit Committee is responsible for ensuring that Lihua complies with all laws and regulations that have a material impact on the Company's financial statements.  Despite their duties, and responsibilities, the members of the Audit Committee failed to ensure that the Board had adequate corporate governance policies in place to prevent the wrongdoing alleged herein.  As such, Defendants Serbin and Lau[2] face a substantial threat of liability and cannot fairly consider a demand to commence litigation.

116.     Additionally, as members of the Audit Committee, Defendants Serbin and Lau were responsible for ensuring that the Company's internal controls over compliance and

---

[2] Defendant Bruce resigned prior to the commencement of this litigation.

financial reporting were adequate and that the Company's quarterly and annual financial statements were accurate. Therefore, the Audit Committee was directly responsible for approving the Company's failure to comply with accounting principles and issuing materially false and misleading financial statements. Therefore, there is significant doubt that Defendants Serbin and Lau are disinterested because they face a substantial likelihood of liability for their breaches of fiduciary duties, including their duties of good faith, fair dealing and loyalty, as well as other violations of law. As such, Defendants Serbin and Lau are not disinterested or independent, and are not capable of responding adequately to a demand. Demand upon them is therefore excused as futile.

117.   In addition, the Company's Code of Ethics and Conduct requires "compliance with established accounting procedures, the Company's system of internal and disclosure controls and generally accepted accounting principles at all times. In order to achieve such compliance, the Company's records, books and documents must accurately reflect the transactions and provide a full account of the Company's assets, liabilities, revenues and expenses. Knowingly entering inaccurate or fraudulent information into the Company's accounting system is unacceptable and may be illegal." By releasing the false and misleading statements complained of herein, Defendants Serbin and Lau failed to comply with this requirement and therefore face a strong possibility of personal liability and cannot disinterestedly consider a demand upon themselves.

118.   Indeed, the adoption of the Sarbanes-Oxley Act also placed significant additional responsibilities on the Board of Directors of Lihua to improve corporate financial accounting and internal controls and to improve corporate financial responsibility and disclosure. Thus, despite the Lihua Board's public posture of concern over good corporate governance, controls,

disclosure integrity and overall compliance with the Sarbanes-Oxley Act, in fact, at all relevant times, the Individual Defendants had caused or allowed the falsification of the Company's reported financial results. Any real compliance with Sarbanes-Oxley would have exposed the Individual Defendants' scheme, brought it to an end and resulted in embarrassing discharges and disclosures. Thus, the Board of Lihua did not enforce or comply with Sarbanes-Oxley, despite its legal obligation under U.S. law to do so, and they will not now sue themselves for their failures to achieve such compliance.

119.    Additionally, because of their significant ties to PRC and that the PRC government is controlling Defendants B. Wang and Zhang through its indirect controlling interest in the Company as demonstrated by the Chinese government's possession of Company assets and these Defendants failure to attempt to procure such assets for the benefit of the Company, Defendants B. Wang and Zhang cannot fairly consider a demand to commence litigation.

120.    Moreover, the Individual Defendants, including the Current Directors, had a duty to keep abreast of events concerning the Company in China. Indeed, this is demonstrated by the Company's extensive recognition of those risks as set forth in the Company's 2013 Form 10-K, which contains sets seven pages of risk factors relating to doing business in the PRC and, as set forth in more detail below, the Company's 2013 Form 10-K even has its own standalone section entitled "Risks Associate with Doing Business in China."

121.    The Company's 2013 Form 10-K sets forth the following relevant information, in part:

**<u>Risks Associated with Doing Business in China</u>**

- Our operations and assets in China are subject to significant political and economic uncertainties.

- We derive a substantial portion of our sales from China and a slowdown or other adverse developments in the PRC economy may materially and adversely affect our customers, demand for our services and our business.

- Currency fluctuations and restrictions on currency exchange may adversely affect our business, including limiting our ability to convert Chinese Renminbi into foreign currencies and, if Chinese Renminbi were to decline in value, reducing our revenue in U.S. dollar terms.

- The application of PRC regulations relating to the overseas listing of PRC domestic companies is uncertain, and we may be subject to penalties for failing to request approval of the PRC authorities prior to listing our shares in the U.S.

- We have granted stock options to three of our past and current PRC employees and our CEO, Mr. Zhu, who has options to purchase shares in our majority shareholder, Magnify Wealth, which may require registration with SAFE. We may also face regulatory uncertainties that could restrict our ability to issue equity compensation to our directors and employees and other parties who are PRC citizens or residents under PRC law.

- PRC SAFE Regulations regarding offshore financing activities by PRC residents have undertaken continuous changes which may increase the administrative burden we face and create regulatory uncertainties that could adversely affect our business.

- Because our principal assets are located outside of the United States and with the exception of one director and one officer, the rest of our directors and officers reside outside of the United States, it may be difficult for you to enforce your rights based on the United States Federal securities laws against us and our officers and directors in the United States or to enforce judgments of United States courts against us or them in the PRC.

- We may have limited legal recourse under PRC law if disputes arise under our contracts with third parties.

- We must comply with the Foreign Corrupt Practices Act.

- Due to various restrictions under PRC laws on the distribution of dividends by our PRC operating companies, we may not be able to pay dividends to our stockholders.

- Changes in foreign exchange regulations in the PRC may affect our ability to pay dividends in foreign currency or conduct other foreign exchange business.

- The Chinese government exerts substantial influence over the manner in which we must conduct our business activities.

- We may have difficulty establishing adequate management, legal and financial controls in the PRC.

- It may be difficult to protect and enforce our intellectual property rights under PRC law.

- Under PRC law, we are required to obtain permits and business licenses, and our failure to do so would adversely impact our ability to conduct business in China.

- If our land use rights are revoked, we would have no operational capabilities.

- Because we may not be able to obtain business insurance in the PRC, we may not be protected from risks that are customarily covered by insurance in the United States.

- We are subject to the environmental protection law of China.

- Any recurrence of severe acute respiratory syndrome, or SARS, or another widespread public health problem, could adversely affect our operations.

- The audit report included in this annual report is prepared by auditors who are not inspected by the Public Company Accounting Oversight Board and, as such, you are deprived of the benefits of such inspection.

122.    The fact of the matter is that doing business in China is fraught with risk and is a matter that the Lihua Board of Directors should have been sensitive to and kept current on how those risks were affecting the Company.   The Lihua Board should have been diligent in monitoring events in China through various media outlets, including but not limited to, the *People's Daily*, the official newspaper of the government in China.   The *People's Daily* is published worldwide with a circulation estimated at 3 to 4 million people.   It also publishes editions in English, Japanese, French, Spanish, Russian, Arabic, Kazakh, Uyghur, Zhuang, Mongolian, Korean and other minority languages in China and provides direct information on the policies and viewpoints of the PRC, a necessary tool for the management and board of a company, such as Lihua, which is materially influenced by the PRC and events in China.

123.    The fact that the article in the *People's Daily* which disclosed Lihua's financial troubles went unnoticed by Lihua's Board of Directors, who were charged with oversight duties, demonstrates the Board's utter and complete conscious disregard of its fiduciary duty.   At the time of the publication of the article in *People's Daily* two of the Current Directors, Defendants

Serbin and Lau, were members of Lihua's Board. They should have known the adverse information regarding the Company that appeared in the *People's Daily*, at least within days of publication. They did not and the failure to do so is a violation of their oversight duties. Indeed, it was not until 32 days after the article appeared in the *People's Daily* that the Company made its first disclosure of the news and the Board conceded that it was just beginning the process of verifying the accuracy of the news report. Specifically, Defendants Serbin and Lau, both of whom the Company touted as having substantial experience and familiarity with working in the PRC, should have been aware of the Company's financial issues and should have undertaken a timely investigation to verify this information. Thus, the failure of the Board to even have knowledge that adverse conditions may exist at the Company until well over a month after it was publicly reported is unconscionable.

124.    Demand upon the two remaining members of the Board of Directors, Defendants B. Wang and Zhang, would be futile since both of these Defendants personally benefited from the improper transfer of Company assets by Defendant Zhu. Pursuant to the Company's Form 8-K, Defendant Zhang is the Chairman of Jinhong and Defendant B. Wang is a Director of Jinhong. In a private stock purchase agreement, Defendant Zhu, through Magnify Wealth, sold 13,195,000 shares of common stock of the Company to Power Apex. Power Apex is a wholly owned subsidiary of Jinhong. Accordingly, Defendants B. Wang and Zhang have directly benefited from the wrongs alleged herein and accordingly, cannot in good faith exercise business judgment to determine whether to bring this action against themselves.

125.    Therefore, Defendants Serbin, Lau, Bao Wang and Zhang, face a sufficiently substantial likelihood of liability, and thus, there is a reasonable doubt as to each Defendant's

disinterestedness in deciding whether pursuing legal action would be in the Company's best interest. Accordingly, demand upon the Company's Current Directors is excused as being futile.

## CAUSES OF ACTION

### COUNT I

**(Violations of § 14(a) of the Exchange Act Against Defendants Zhu,
Y. Wang, Bruce, Serbin and Lau)**

126.    Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth herein except as to any allegations relating to recklessness and knowing conduct on the part of any Defendant.

127.    This claim for relief is not based on any allegations of knowing or reckless conduct by any defendant. This claim does not allege, and does not sound in fraud, and Plaintiff disclaims any reliance upon or reference to allegations of fraud.

128.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), provides that "[i]t shall be unlawful for any person, by use of the mails or by means of instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of ant security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

129.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

130.    Here, Lihua's 2012 Proxy Statement and 2013 Proxy Statement disseminated during the Relevant Period violated § 14(a) and Rule 14a-9 because they omitted material facts. In the exercise of reasonable care, Defendants should have known that the 2012 Proxy Statement and 2013 Proxy Statement were materially false and misleading.

131.    The misrepresentations and omissions in the 2012 Proxy Statement and 2013 Proxy Statement were material to Plaintiff in casting an informed vote on the subjects under consideration. The 2012 Proxy Statement and 2013 Proxy Statement were an essential link in the accomplishment of the continuation of Defendants' financial condition concealment and failure to exercise their oversight duty in connection with the Company's risk manangement, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies.

132.    The Company was damaged as a result of the material misrepresentations and omissions in the proxy statements.

## COUNT II

### (Against The Individual Defendants for Breach  of Fiduciary Duty)

133.    Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth herein.

134.    The  Individual  Defendants  owed  and  owe  Lihua  fiduciary  obligations, including the obligations of good faith, fair dealing, loyalty  and care. Among other things, the Individual Defendants owed a  fiduciary duty to Lihua to supervise the issuance of its press releases and public filings and ensure  that they were truthful, accurate and conformed to federal and state securities law. The Individual Defendants breached their fiduciary duties by:

a.    Misrepresenting the Company's financial performance and condition in Form 10-Q's and Form 10-K's and other documents filed with the SEC and thereby subjecting the Company to the Securities Class Actions;

b.    Allowing for materially inadequate controls over the Company's policies and practices with respect to accounting at least for revenue, income, and asset valuations;

c.    Allowing Company assets to be diverted and/or transferred to the Company's controlling shareholder, the government of the PRC, without recourse;

d.    Failing to conduct an adequate investigation into the purported misconduct of the Company's former and current senior management and seeking redress for such misconduct;

e.    Allowing the Company's financial statements to be misrepresented and casing the Company's stock price to be artificially inflated;

f.    Allowing the Company to fail to timely file its periodic reports with the SEC in violation of federal rules and regulations;

g.    Allowing the Company's shares to be delisted without submitting a plan of compliance as represented and failing to appeal the decision to delist the Company's shares;

h.    Allowing the Company to fail to disclose pertinent, material, and important information in a timely manner.

135.    By reason of the foregoing, Lihua was damaged.

## COUNT III

### (Against the Individual Defendants for Waste of Corporate Assets)

136.    Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth herein.

137.    Defendants breached their fiduciary duties by failing to properly supervise and monitor the adequacy of Lihua's internal controls and by allowing the Company to engage in an illegal, unethical and improper course of conduct.

138.    As a result of the Individual Defendants' illicit course of conduct and breaches of fiduciary duty, the Company has incurred significant potential liability for legal costs, penalties, fines, and/or legal fees in connection with the defense of the Individual Defendants' unlawful course of conduct complained of herein.

139.    The Individual Defendants also wasted corporate assets by permitting Company assets to be diverted to the PRC government and failed to take any steps in order to have those assets returned.

140.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

141.    By reason of the foregoing, Lihua was damaged.

<u>COUNT IV</u>

**(Against the Individual Defendants for Unjust Enrichment)**

142.    Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth herein.

143.    Through the wrongful course of conduct and actions complained of herein, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of Lihua. The wrongful conduct was continuous and resulted in ongoing harm to the Company. The Individual Defendants were unjustly enriched pursuant to receiving compensation and/or director remuneration while breaching their fiduciary duties to the Company, as alleged herein. That compensation included: (i) Defendant Zhu received $250,000 salary in cash compensation each for years 2012 and 2013 pursuant to a three year employment

agreement entered into on October 23, 2011; (ii) Defendant Huang received $200,000 in cash compensation per year for years 2012, 2013 and 2014, and stock options to purchase 225,00 shares at $4.50 per share, vesting in equal installments on October 22, 2012, 2013 and 2014; (iii) Defendant Y. Wang received $200,000 in cash compensation per year for years 2012, 2013 and 2014 pursuant to an employment agreement entered into on October 23, 2011; (iv) Defendant Bruce received $105,935 in total compensation for 2012; (v) Defendant Serbin received $93,935 in total compensation in 2012; and (vi) Defendant Lau received $93,935 in total compensation for 2012.

144.    Plaintiff, as a shareholder of Lihua, seeks restitution from the Individual Defendants, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants, from their wrongful course of conduct and fiduciary breaches.

145.    By reason of the foregoing, Lihua was damaged.

### COUNT V

**(Against the Individual Defendants for Aiding and Abetting Fiduciary Violations)**

146.    Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth herein.

147.    The wrongful conduct alleged herein was continuous, connected, and on-going since August 2012. The Individual Defendants' misconduct resulted in continuous, connected and on-going harm to the Company.

148.    The Individual Defendants had the power and/or ability to, and did, directly or indirectly control or influence the Company's general affairs, including the content of public statements disseminated by Lihua and improper transfer of Company assets by Defendant Zhu, and had the power and/or ability to directly or indirectly control or influence one another.

57

149.   Each Individual Defendant is jointly and severally liable to the same extent as any other Defendant is liable for breaches of fiduciary duty as set forth herein or violations of any other laws.

150.   As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

<u>COUNT VI</u>

**(Derivatively Against the Individual Defendants for Gross Mismanagement)**

151.   Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

152.   By their actions alleged herein, the Individual Defendants abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Lihua in a manner consistent with the operations of a publicly held corporation:

a.   Misrepresenting the Company's financial performance and condition in Form 10-Q's and Form 10-K's and other documents filed with the SEC and thereby subjecting the Company to the Securities Class Actions;

b.   Allowing for materially inadequate controls over the Company's policies and practices with respect to accounting at least for revenue, income, and asset valuations;

c.   Allowing Company assets to be diverted and/or transferred to the Company's controlling shareholder, the government of the PRC, without recourse;

d.   Failing to conduct an adequate investigation into the purported misconduct of the Company's former and current senior management and seeking redress for such misconduct;

e.   Allowing the Company's financial statements to be misrepresented and casing the Company's stock price to be artificially inflated;

58

       f.      Allowing the Company to fail to timely file its periodic reports with the SEC in violation of federal rules and regulations;

       g.      Allowing the Company's shares to be delisted without submitting a plan of compliance as represented and failing to appeal the decision to delist the Company's shares;

       h.      Allowing the Company to fail to disclose pertinent, material, and important information in a timely manner.

153.    As a direct and proximate result of The Individual Defendants' gross mismanagement and breaches of duty alleged herein, Lihua has sustained significant damages.

154.    As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Directing Defendants to account to Lihua for all damages sustained or to be sustained by the Company by reason of the wrongs alleged herein;

B.    Directing Lihua to take all necessary actions to reform its corporate governance and internal procedures to comply with applicable laws and protect the Company and its shareholders from a recurrence of the events described herein, including, but not limited to, a shareholder vote resolution for amendments to Lihua's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote on corporate governance policies;

C.    Awarding to Lihua restitution from the Defendants and ordering disgorgement of all profits, benefits and other compensation obtained by the Individual Defendants.

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees and expenses; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 15, 2014                          Respectfully submitted,

                                                **FARUQI & FARUQI, LLP**

                                                By: _____
                                                Nadeem Faruqi (NF-1184)
                                                Nina M. Varindani (NV-1090)
                                                369 Lexington Avenue, 10th Floor
                                                New York, New York 10017
                                                Telephone: 212-983-9330
                                                Facsimile:  212-983-9331

                                                **FARUQI & FARUQI, LLP**
                                                Stuart J. Guber
                                                101 Greenwood Avenue, Suite 600
                                                Jenkintown, PA 19046
                                                Telephone: 215-277-5770
                                                Facsimile:  215-277-5771

                                                *Attorneys for Plaintiff*

## VERIFICATION

STATE OF NEW YORK

COUNTY OF CORTLAND

William Peck, being duly sworn, deposes and says:

      I am the plaintiff in this action. I am a shareholder of Lihua International, Inc. (the "Company"), and am ready, willing, and able to pursue this action in the hope of improving the Company and recovering damages for the Company caused by the defendants' conduct. I have reviewed the allegations made in this Verified Shareholder Derivative Complaint and to those allegations of which I have personal knowledge I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true. Having received a copy of this Complaint, having reviewed it with my counsel, I hereby authorize its filing.

By: _____
      William Peck

Sworn to before me this ____ day of _____, 2014

_____
Notary Public

      Sandy F. Samson
      4810533
      Notary Public, State of New York
      Qualified in Cortland County
      My commission expires FEBRUARY 28th, 2015